UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

HOPE BROWN )
 )
v. ) NO. 2:06-CV-51
 ) (NO. 2:03-CR-74)
UNITED STATES OF AMERICA ) Judge Greer
 )

# **MEMORANDUM OPINION**

Hope Brown ("petitioner" or "Brown"), a federal prisoner, has filed a "Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 USC § 2255." [Doc. 1]. Subsequent to the filing of her motion, Brown filed a 29 page untitled pleading which the Court construes as a memorandum of law, [Doc. 9], a "Supplement For Purposes For Record Clarification," [Doc. 10], and a motion to amend her petition. [Doc. 11].[1] Her motion to amend petition was granted by the Magistrate Judge on January 19, 2007.

The United States has responded in opposition to the motion [Doc. 5] and the matter is now ripe for disposition. The Court has determined that the motion and record of prior proceedings in the case conclusively establish that the petitioner is not

---

[1] The petitioner also filed a motion in her criminal case entitled "Motion To Correct Miscalculation Of Sentencing Guideline Level 93 CR 1274" [Doc. 450]. That motion was denied by order entered on May 14, 2007, and is no significance to the pending motion except that Brown also raised many of the ineffective assistance of counsel claims in that document as well.

entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be denied.

I.  **Procedural and Factual Background**

Brown was one of 14 defendants indicted by the federal grand jury on September 23, 2003, in a 205 count indictment charging various drug, money laundering, and illegal wire transfer offenses. Brown was charged in Counts 2, 3, 99, 100, 107, 120-22, 172-74 and 177. She pled guilty on December 13, 2004, to Counts 2 and 13 of the indictment, *i.e.*, conspiracy to distribute and possess with the intent to distribute 50 grams or more of cocaine base (Count 2) and conspiracy to launder monetary instruments (Count 3).

A presentence report ("PSR") was ordered and disclosed to the parties on February 5, 2005. Based upon a total offense level of 33 and a criminal history category of I, Brown's advisory guideline range was 135 to 168 months of imprisonment. There were no objections to the PSR. On June 27, 2005, after a sentencing hearing, the Court varied downward and imposed a sentence of 120 months. Judgment was entered on July 11, 2005, and no direct appeal was taken. The instant § 2255 motion was timely filed on March 9, 2006.

At the time of the entry of petitioner's guilty plea, certain facts were stipulated

to by the petitioner in connection with her plea:

> Through the testimony of several witnesses, to include coconspirators, the government would demonstrate, beyond a reasonable doubt, that from approximately the month of January, 2000, and continuing to on or about September 23, 2003, the defendant did knowingly, intentionally and without authority conspire with at least one other person to distribute and possess with the intent to distribute at least 500 grams but less than 1.5 kilograms of a mixture or substance containing a detectible amount of cocaine base (crack), a Schedule II, controlled substance.[2]
>
> In furtherance of the conspiracy, defendant Brown distributed crack cocaine that she obtained from coconspirator Darryl McCrae. During the period between March and October, 2002, defendant Brown obtained two to four ounces of crack cocaine every two to three days from Darryl McCrae. In addition to distributing crack cocaine defendant sent drug proceeds via Western Union to Darryl McCrae. Finally, defendant Brown and a coconspirator traveled from the Eastern District of Tennessee to North Carolina to pick up supplies of crack cocaine that she transported back to Tennessee for further distribution. Defendant Brown made two trips per week during a three month period, picking up between nine and twenty-two ounces at a time.
>
> During the investigation law enforcement agents conducted a trash pull from defendant Brown's residence and recovered baggies with corners missing, paperwork of drug debt records, and paperwork showing residence ownership and a letter asking her mother to put the residence in another

---

[2] Although Brown's base offense level was determined by her stipulation limiting her responsibility to 1.5 kilograms, it appears that her involvement was actually much greater (two to four ounces every two to three days for eight months).

3

name.[3]

> Also during the investigation, law enforcement agents made four purchases of crack cocaine, totaling 2.04 grams, from defendant Brown in recorded and surveilled transactions. During one of the transactions a confidential informant, acting at the directions of law enforcement agents, paid Brown $50.00 toward a previous drug debt.

Additionally, the PSR contained the following unobjected to facts:

> According to Special Agent Rainer Drolshagen, of the Federal Bureau of Investigation, agents became aware of the members of the conspiracy in early 2000. Through the use of informants and confidential sources, it was determined that co-defendants Garrett Johnson, Gary McCrae, and Darrel McCrae, were obtaining cocaine base (crack) from North Carolina, and selling the drug to various distributors in the Johnson City area. These individuals were charged with engaging in a continuing criminal enterprise. Agent Drolshagen verified that coconspirators had independently provided information that defendant Brown was involved by assisting Darrell McCrae in his drug distribution activity and wiring money for McCrae for drug debts. The defendant became involved in the conspiracy based on her addiction to the drugs, and stated she was involved for a period of six months. She admitted traveling to North Carolina on occasion to pick up crack cocaine, and assisting in the distribution activities. Based upon the above information, the defendant will be held accountable for her involvement in the distribution of 500 grams to 1.5 kilograms of crack cocaine.

## III. Standard of Review

---

[3] Brown alleges in her § 2255 motion that she "did not purchase any drugs for distribution, only for her personal use." Both the quantity of crack cocaine purchased by her from McCrae and the items found in the "trash pull" from Brown's residence contradict this claim.

This Court must vacate and set aside petitioner's conviction upon a finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255(b). Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious

effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. 339 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996).

### III. Analysis and Discussion

Brown has filed numerous documents related to her § 2255 motion, including a 29 page memorandum in support of the motion. Her pleadings are confusing, difficult to understand, and, in many cases, simply a series of citations to, and quotes from, various court decisions with no effort to relate them specifically to her case. As best the Court can discern, Brown raises claims of ineffective assistance of both appointed and retained counsel. She also attacks the reasonableness of her sentence.

Brown's sole allegation against appointed counsel is stated as follows: "The defendant could not obtain any advice, assistance or communication with him while he was her counselor." After retaining counsel, Brown states that her retained counsel "did in fact state that attorney Cowden had done infutable [sic] damage to the defendant's

6

case in regards to motions of discovery materials and talks with the U.S. Attorney's office without the presence of the defendant." Petitioner's claims of ineffective assistance of retained counsel relate to counsel's alleged failure to (1) address a downward departure under USSG § 5K2.12 (diminished capacity); (2) obtain a psychiatric evaluation to aid her at sentencing; (3) seek a reduction in offense level for her "minor role" in the offense; (4) seek relief pursuant to USSG § 2D1.1 (safety valve) and; (5) seek a downward departure pursuant to USSG § 5K1.1 for substantial assistance. Brown also alleges that she received assurance from counsel that her exposure at sentencing would be a maximum of five years of imprisonment.

## A. Ineffective Assistance of Counsel

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.,* counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defendant, *i.e.,* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight,

but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Id.* at 689-90. A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy,* 99 F.3d 1302, 1311(6th Cir. 1996); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges her guilty plea, to establish the prejudice prong, she must demonstrate that without counsel's alleged errors, she would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). To demonstrate a reasonable probability that she would have gone to trial, a defendant is required to present evidence apart from a bare assertion that but for counsel's error she would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), *quoting Strickland*, 466 U.S. at 690. "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

**1. Ineffective Assistance of Appointed Counsel**

As set forth above, petitioner asserts that her appointed attorney "had done infutable [sic] damage to the defendant's case in regards to motions of discovery materials and talks with the U.S. Attorney's office without the presence of the defendant." She also argues that his "advice, assistance or communications" were deficient. Brown's allegations against her appointed counsel are insufficient on their face. When a petitioner files a § 2255 motion, she must set forth facts that entitle her to relief. Brown has set forth no facts in support of this claim and it is, therefore, insufficient and without merit.

**2. Diminished Capacity and the Need for a Psychiatric Evaluation**

Petitioner asserts that counsel was constitutionally ineffective for failing to seek a downward departure pursuant to USSG § 5K2.12,[4] a departure she alleges would be "plain and evident" in her case. While Brown acknowledges that she is not "permanently mentally incapitated [sic]" she does allege that "she was temporarily under such a stage of depression she could not reasonably understand the magnitude of her criminal activity." She further alleges that she was addicted to crack cocaine due to her severe depression and that a "psychiatric evaluation would have been beneficial to her defense."

---

[4] Petitioner was sentenced under the 2003 version of the United States Sentencing Guidelines. Section 5K2.12 in the applicable guideline manual dealt with a downward departure for coercion and duress. Petitioner apparently erroneously refers to § 5K2.12, when in fact she is referring to § 5K2.13.

USSG § 5K2.13 provides for a downward departure for diminished capacity. Under the guidelines section, a below guidelines sentence may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. The court may not depart, however, if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of certain enumerated offenses. USSG § 5K2.13. The application note found in the commentary to § 5K2.13 defines "significantly reduced mental capacity" as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." USSG § 5K2.13, app. note 1.

Brown has alleged no facts which would indicate her entitlement to the downward departure provided by § 5K2.13. She makes no allegation that she could not understand the wrongfulness of her behavior, only that "she could not reasonably understand the *magnitude* of her criminal activities." (emphasis added). In other

words, Brown has not pled sufficient facts to suggest that she suffered from a significantly reduced mental capacity as required by § 5K2.13. Even if she had, the guideline, on its face, excludes significantly reduced mental capacity caused by the voluntary use of drugs. This, too, would appear to exclude her from the purview of the section.

Likewise, Brown has pled no facts which would indicate that a psychiatric evaluation would, in any way, have aided her at her sentencing hearing. She alleges that she suffered from depression, a fact which was noted in the PSR and reiterated by her counsel at the time of sentencing. Thus, it appears that the Court was fully apprised of the petitioner's depression and her drug addiction, and her counsel addressed these issues both in the sentencing memorandum filed on Brown's behalf and orally at the sentencing hearing. Petitioner cannot meet either prong of the *Strickland* standard as to this claim. She has not demonstrated that counsel was deficient or that she was prejudiced by counsel's failure to move for a downward departure based upon diminished capacity or in counsel's failure to seek a psychiatric evaluation. Given that the Court was fully aware of petitioner's depression and drug addiction, she cannot show that any action on the part of her counsel would have altered the outcome of the case or led the Court to select a lower sentence. Her claim lacks merit.

### 3. Minor Role Adjustment

Brown argues that her role in the offense covered a period of "six (6) short months", that her participation in the conspiracy was motivated by her drug addiction and that she realized "no monetary gain thru cash, property or other tangible items ..." She also notes that she had no prior history of arrests and that she is not a threat to society.[5] In reality, it appears that petitioner is simply arguing the reasonableness of her sentence. All of these factors were made known to the Court through both the PSR and her attorneys filings and argument to the Court. These factors were considered by the Court at the time of imposition of sentence and petitioner cannot establish either prong of the *Strickland* standard with respect to this claim. This claim is also without merit.

**4. Safety Valve**

Next, petitioner complains that her retained attorney "failed to apply to the courts for the defendant to obtain the safety valve. . ." She argues that she was clearly eligible for safety valve treatment in the case. Petitioner's claim here is completely contradicted by the record. The PSR includes a reduction in offense level based upon the safety valve and both the United States Attorney and the Court acknowledged at the time of sentencing that petitioner met the safety valve criteria and that, as a result, the minimum

---

[5] Petitioner's claim that she has no prior arrests or history of criminal activity is incorrect. The PSR indicates that she was convicted of the misdemeanor offense of possession of marijuana in 1976 and misdemeanor convictions for a worthless check in 1996 and again in 2003.

mandatory sentence would not apply. The Court noted, during the sentencing hearing, that the advisory guideline range in the case, however, was "driven" by the calculations on the money laundering conviction, thus rendering the safety valve largely irrelevant except to the extent that the Court was given discretion to sentence below the otherwise applicable mandatory minimum sentence.

The statutory mandatory minimum sentence applicable to the drug conspiracy conviction played no role in the petitioner's sentence in this case. The Court clearly acknowledged that petitioner was qualified for the safety valve and noted, on the record, that the mandatory minimum sentence would not apply. Thus, the petitioner cannot show that her counsel was deficient in any way, nor can she establish any prejudice, and her safety valve argument is devoid of merit.

**5. Substantial Assistance**

Brown argues that her counsel was ineffective for failing to seek a downward departure pursuant to USSG § 5K1.1 for substantial assistance. Brown's plea agreement in this case provided for her cooperation with the government and further provided that the United States would bring the nature, extent, and value of her cooperation to the attention of the Court at the time of sentencing. The agreement further provided that "[i]f, in the sole discretion of the United States, the defendant provides substantial assistance, the United States will make a motion for downward departure pursuant to

5K1.1 of the Sentencing Guidelines or 18 U.S.C. § 3553(e), or both, with the District Court allowing the District Court to impose a sentence which may fall below the minimum mandatory term of imprisonment or below the sentencing guidelines." Plea agreement, ¶ 8.

At the beginning of Brown's sentencing hearing, the United States announced to the Court that Brown had in fact attempted to provide information to the United States but that the information never rose to the level of what was required for substantial assistance. Likewise, Brown's counsel acknowledged to the Court that Brown was unable to provide substantial assistance "because she doesn't know the interworkings of the conspiracy."

Petitioner pleads no facts which establish her entitlement to a downward departure motion under § 5K1.1. The record in this case establishes that the United States apprised the Court of the limited nature of Brown's cooperation and that her attorney argued to the Court that she "was willing and able to do anything" to assist the government but that she simply had no additional information to offer. Petitioner's counsel also argued to the Court during the sentencing hearing that it was unfair for the more heavily involved conspirators to receive the benefit of a motion for downward departure when the least culpable, such as Brown, had little to offer in the way of cooperation. The record reflects that all these arguments were considered by the Court,

including the government's recommendation that Brown be sentenced at the bottom of the applicable guideline range in view of her attempted cooperation. Brown can show no deficient performance on the part of her attorney, nor can she show any prejudice by any omission of counsel. This claim, therefore, provides no basis for relief.

**5. Counsel's Representations as to Sentence**

Brown alleges that she was led to believe by defense counsel that her sentence in this case would be a maximum of five years. According to Brown, "this figure was based solely on what [counsel] related personally to Brown in the sentencing memorandum." As an initial matter, Brown has offered no facts to support her allegation that any kind of assurance was given by counsel as to the sentence she would receive. Moreover, the record in this case contradicts Brown's assertion and establishes quite clearly that Brown understood that she was not assured of receiving any particular sentence under her plea agreement with the government.

In that plea agreement, Brown acknowledged that the Court could "impose any lawful term of imprisonment up to the statutory maximum" and that the maximum penalty to which she would be exposed was a term of life imprisonment. Plea Agreement, ¶¶ 1(a),(2). She further acknowledged in her plea agreement that the District Court would determine the appropriate sentence and that "this determination will be based upon the entire scope of the defendant's criminal conduct, criminal

history, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines." *Id.*, ¶ 7. She also acknowledged that her attorney had "fully explained the nature of the charges, the potential penalties, and any defenses that she might have." *Id.*, ¶ 11. The plea agreement further provided that there were no other agreements, promises or understandings between the defendant and the United States that were not set out in the written plea agreement. *Id.*, ¶ 20.

Additionally, during the plea colloquy, Brown acknowledged under oath that she fully understood all the terms and conditions of her plea agreement, that she understood the required mandatory minimum term of imprisonment as well as the maximum statutory penalty, that she understood that the sentence for her case could not be determined until a PSR was prepared, and that she understood that the Court had the authority to impose a sentence more severe than the sentence called for in the guidelines. Furthermore, during the change of plea hearing, the Court specifically asked defense counsel whether he had made any representations to the defendant as to what sentence the Court might impose and defense counsel indicated that he had not. Brown, under oath, acknowledged that counsel had not made any representations to her as to what sentence she might receive.

Brown appears to rely on the sentencing memorandum filed by counsel on her behalf in support of her argument. While counsel clearly advocated a five year term of

imprisonment for the defendant in both his sentencing memorandum and in his argument to the Court at the time of sentencing, there is simply nothing in the defendant's sentencing memorandum prepared by counsel which could conceivably be read as an assurance of a five year sentence. This Court finds any assertion by Brown that counsel represented to her that she would receive a five year sentence to lack credibility and to be, in fact, contradicted by the record. This claim lacks merit.

## B. Reasonableness of Defendant's Sentence

Throughout her numerous pleadings, petitioner makes a host of claims that her sentence in this case is unreasonable. She references the "totality of circumstances and the disparity of like defendants",[6] argues that there was no need to protect the public from future crimes she might commit, argues that her conduct was "aberrant behavior" and generally argues that her sentence is excessive in light of the circumstances of the case.

She also suggests that the Court may have felt constrained to impose a guideline

---

[6] Brown argues in her motion that the average prison term imposed for her co-conspirators was 52 months and that their sentences ranged "from 48 to 78 months." Brown's PSR flatly contradicts her claim. For instance, co-defendant Sean Barber was sentenced to a term of 136 months imprisonment, co-defendant Travis Jacobs was sentenced to 264 months, co-defendant Gary McCrae was sentenced to 288 months, co-defendant Candy Odom was sentenced to 132 months and co-defendant Shawn Darnell Clark was sentenced to 84 months.

In addition, Brown's disparity argument does not address disparity created by prosecutorial discretion concerning charging decisions, downward departure for substantial assistance and the like. Her attorney did argue at sentencing that it was unfair for more culpable defendants to receive lighter sentences because they had more information to provide to the government, an argument the Court considered but rejected.

sentence because *Booker* had been decided only recently prior to sentencing. A review of the transcript of the sentencing hearing disputes these claims. The transcript clearly establishes that the Court understood that the guidelines were advisory and that the mandatory minimum sentence did not apply because of Brown's safety valve eligibility. The Court considered each of the relevant § 3553(a) factors and, in fact, varied downward somewhat from the low end of the guideline range based upon certain of the arguments made by defendant's counsel on her behalf. The petitioner pleads no facts in support of her argument which were not considered by the District Court at the time of sentencing.

Furthermore, Brown has procedurally defaulted any challenge as to the reasonableness of her sentence by her failure to file a direct appeal. A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982). Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that she is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). The petitioner here makes no claim of actual innocence, only that she should be entitled to a resentencing to a lower sentence.

Likewise, she makes no effort to establish any cause for the procedural default nor does she show any prejudice as a result. This claim also is without merit.

Throughout these confusing pleadings filed by Brown, she raises various other claims of ineffective assistance of counsel in a conclusory manner without any factual or legal development. As a result, the Court declines to consider any of these claims.[7]

## IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, her motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and her petition **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must decide whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificates of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be

---

[7] For instance, Brown, in her motion to amend, alleges that counsel "failed to properly preserve constitutional claims during sentencing." She pleads no facts, however, to support her allegation, nor does she identify the constitutional claims. In the same category are Brown's claims that her attorney erroneously advised her not to appeal and that he did not spend enough time with her.

considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by her.

A separate order will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE